## CITIZENS' MUTUAL FIRE INSURANCE COMPANY *vs.* DANIEL R. SORTWELL & others.

A by-law of an insurance company, which provides that a special meeting shall be called by the president, or in his absence by the secretary, on application made to them in writing by ten members, does not preclude the directors from calling special meetings without such application.

One who becomes a member of a mutual insurance company after it has practically adopted the provisions of *St.* 1849, *c.* 104, § 2, authorizing the property insured to be divided into classes, and acted thereon for several years, cannot object, in an action to recover an assessment upon his deposit note, that the same were not formally adopted at a meeting regularly called for that purpose.

If the records of a corporation show that a meeting was duly called, a proper notice given, and that business was transacted at it, the presumption is that a quorum of members was present, unless the contrary clearly appears.

The directors of a mutual insurance company may divide the property insured by them into classes, under *St.* 1849, *c.* 104, § 2, from time to time, as the policies are issued; and after the full amount of one hundred thousand dollars is subscribed to be insured in each class, the policies will take effect, and one who becomes insured thereafter cannot object, in an action to recover an assessment upon his deposit note, that the proceedings were irregular.

Subscriptions for insurance in a particular class of risks of a mutual insurance company, which are made a short time before the adoption by the company of the provisions of *St.* 1849, *c.* 104, § 2, may, in an action to recover an assessment upon a deposit note of a subsequent member, after the lapse of ten years, without objection from the company or the persons insured, be taken as a part of the sum required by that statute to be subscribed, before the issuing of policies.

A statement in the instructions issued by the directors of a mutual insurance company to agents, that distilleries are not insurable, does not preclude the company from making a valid contract of insurance upon a distillery.

CONTRACT brought by a mutual insurance company, to recover an assessment of fifty-five dollars upon a deposit note executed to them by the defendants, on a policy upon a distillery insured in the company's second class. The answer alleged that the property insured by the plaintiffs had never been legally divided into two classes, and that no second class had ever been legally established, and that the assessment was unequal and illegal, and denied that the defendants were legally insured in that class.

At the trial in the superior court, before *Lord*, J., without a jury, it appeared that the plaintiffs accepted their charter on the 1st of October 1846, and at the annual meeting on the 9th of January 1849, and at meetings of the directors held thereafter

votes were passed looking to a division of the property to be in-sured by the company into two classes ; and at a directors' meet-ing held on the 5th of June 1849 it was voted that the secretary be requested to call a meeting of the policy holders to be held on the 2d of July to consider the subject of accepting *St.* 1849, *c.* 104, concerning mutual fire insurance companies, and that said notice be given by publishing notice of the same, agreeably to the rules of the corporation.    The meeting was accordingly called, notified and held, and the record thereof showed that there were twenty-three policies represented ; and a committee was chosen to ascertain the necessity of accepting said legislative act, and the meeting was adjourned to the 7th of August.    At the ad-journed meeting the record showed that twenty-four policies were represented, and, the report of the committee having been made, it was voted to accept the statute.    And at various meet-ings of the directors held thereafter, votes were passed recog-nizing a practical division of the property insured by the com-pany into two classes.

The 19th article of the by-laws of the company provided that fifteen members being present at a meeting, either personally or by proxy, should constitute a quorum for doing business ; and article 20th contained the following provision : "A special meet-ing shall be called by the president, or in his absence by the sec-retary, on application made to them in writing by ten mem-bers."

Stephen W. Trowbridge testified that he was secretary and treasurer of the company ; that it appeared from the books of the company that on August 2d 1849 the sum of $453,000, or thereabouts, had been subscribed to be insured in the second class in said company, and that between that time and Octo-ber 1, 1849, $100,000 additional was subscribed ; that the direc-tors began to issue policies in the second class after the vote of the annual meeting of the company in January 1849 ; and that the $453,000 consisted of policies issued as in the second class on or before August 2d 1849, which, with new subscriptions as they came in, constituted that class after the acceptance of *St.* of 1849, *c.* 104.    It also appeared that, after January 1849, a set of

books was opened for the second class; that the business of the two classes had ever since been kept distinct; that policies were issued on and after August 7th 1849, without interruption, in the two classes; that the annual returns required by law had been made for both classes since 1849, and that the annual report of the treasurer and auditing committee contained a separate account for each class.

The defendants' application was put in, and bore date June 20th 1860, in which they request insurance in said company, and upon said application a policy was issued and accepted by them, approved June 22d, by which the plaintiffs insure the defendants, in their second class, against loss or damage by fire in the sum of $2000 on the " stock in trade of a rum distillery, contained in wood and brick building " in Somerville. The act of incorporation and by-laws of the company are printed on the policy. The signature to the note was admitted.

A monthly committee of two directors was regularly chosen, who passed upon all applications for insurance, and approved the issuing of policies, and allotted applicants in the first or second class, and whose doings were reported at the monthly meeting of the directors and by them approved. The method of the assessment and computation was not gone into in this case.

Parol evidence was offered that from October 7th 1849 all the acts of the directors, both as to the taking of risks and their division into classes, payment of losses and of dividends, and laying of assessments, have been conducted strictly with reference to a classification of risks into two classes.

The judge ruled that, upon the evidence presented, the company had not proved a legal division of risks into two classes by the directors, and that the assessment was therefore illegal, because not laid upon all the members of the company, and ordered judgment to be entered for the defendants. The plaintiffs alleged exceptions.

*B. R. Curtis & H. Baldwin,* for the plaintiffs. 1. The special meeting was duly called. *Sargent* v. *Webster,* 13 Met. 497. *Commonwealth* v. *Woelper,* 3 S. & R. 29. *McDaniels* v. *Flower Brook Co.* 22 Verm. 274. *Clarke* v. *Imperial Gas Co.* 4 B. & Ad. 315.

*Great North of England Railway* v. *Biddulph*, 7 M. & W. 243. 2. If not, it is not for the defendants to object. *Chester Glass Co.* v. *Dewey*, 16 Mass. 94. 3. The presumption is that a quorum was present. *Williams* v. *Cheney*, 3 Gray, 220. 4. No formal vote dividing the risks into classes was necessary. The action of the directors was sufficient. *Lexington & West Cambridge Railroad* v. *Chandler*, 13 Met. 311. *London Tobacco Pipe Co.* v. *Woodruff*, 7 B. & C. 842. *Great North of England Railway* v. *Biddulph*, 7 M. & W. 243. 5. The defendants cannot object to informalities happening so long ago, which do not appear to have produced any appreciable effect upon their rights. Redfield on Railways, (2d ed.) 86, and cases cited. *Chester Glass Co.* v. *Dewey*, 16 Mass. 94. *Long Pond Ins. Co.* v. *Houghton*, 6 Gray, 77. *New England Ins. Co.* v. *Belknap*, 9 Cush. 140. 6. The policies issued by the company were valid, whether the required sum had been subscribed or not. *Magdalena Steam Nav. Co.* 6 Jur. (N. S.) 975. *County Commissioners* v. *Aspinwall*, 21 How. (U. S.) 545. *Royal British Bank* v. *Turquand*, 6 El. & Bl. 327. 7. Certainly the defendants cannot make the objection. *Deposit Life Ins. Co.* v. *Ayscough*, 6 El. & Bl. 761. *Hull Flax Co.* v. *Wellesley*, 6 Hurlst. & Norm. 38. *Wolverhampton New Water Works Co.* v. *Hawksford*, 7 C. B. (N. S.) 795. 8. The prohibition to the agents to take distilleries does not affect this risk taken by the company.

*J. S. Holmes & C. S. Lincoln*, for the defendants. 1. The special meeting was not duly called. *Brewer* v. *Chelsea Ins. Co.* 14 Gray, 203. *Hale* v. *Mechanics' Ins. Co.* 6 Gray, 169. *Atlantic Ins. Co.* v. *Fitzpatrick*, 2 Gray, 279. *Wiggin* v. *Baptist Church in Lowell*, 8 Met. 301. 2. It does not appear that a quorum was present. 3. There was no division of the property insured into two classes, after the alleged acceptance of the statute. *People's Ins. Co.* v. *Arthur*, 7 Gray, 267. 4. The requisite amount was not subscribed, to authorize the company to insure in a second class. *St.* 1849, *c.* 104, § 2. 5. The property of the defendants was of a class which the company had voted not to insure ; and the defendants' policy was therefore invalid. *Mulrey* v. *Shawmut Ins. Co.* 4 Allen, 116.

Bigelow, C. J.   The amount involved in the decision of this case is quite disproportionate to the importance of the questions, on the determination of which the right of the plaintiffs to recover depends.   If some of the objections urged by the defendants against the validity of the assessments imposed on them are well taken, the result will be not only that this action must fail, but the conclusion will follow that the plaintiffs have been carrying on the business of insurance for thirteen or fourteen years on an illegal basis, and issuing policies in a manner not authorized by law.   It will also follow that many of their deposit notes are illegal and void.   To understand fully the nature of the main objections raised by the defendants, it is necessary to premise that, in the year 1849, by a statute of that year, *c.* 104, the legislature authorized mutual fire insurance companies then existing to divide the property which they might thereafter insure into two distinct and separate classes, the division of risks to be made according as the risk assumed might be deemed to belong to a greater or less hazardous description of property.   The statute required that, when such a classification should have been made, each policy should designate the class to which it belonged, and that the premiums and deposits received in each class should be kept separate and distinct, and held liable to meet only those losses which might occur in the class to which they belonged.   It was also required that these provisions should not take effect in reference to any company, until they should have been adopted at a meeting of the corporation called for the purpose, and that no policy should be issued to cover property in any separate class, until the amount of one hundred thousand dollars should have been insured in such class.   On the 22d day of June 1860, the plaintiffs issued a policy to the defendants, purporting to insure certain property belonging to them in " the second class," and received from them a deposit note for the sum of eighty dollars, on which they have proceeded to lay an assessment, to recover which this action is brought.   The defendants insist that this rule is not binding on them, and that they are not liable to pay the assessment laid upon it, because the proceedings of the plaintiffs have been irregular and illegal

in several particulars, and the policy issued to the defendants, as well as the premium note given in consideration thereof, are without validity or legal force.

1. The first and leading objection is, that the plaintiffs were not authorized by law to make a policy in the second class, because the *St.* of 1849, *c.* 104, authorizing a division of property insured into two classes, was never legally accepted by the plaintiffs. This objection is put on two grounds. The first is, that the meeting of the corporation, at which the alleged acceptance of the act took place, was not duly called, for the reason that, being a special meeting, it could be legally assembled only in the manner prescribed by the 20th by-law of the company, on the application of ten members. But this objection proceeds on a misconstruction of the terms of the by-law and the purpose it was intended to answer. It is not prohibitory, but only mandatory. It provides a method in which the members of the company can require the officers to call special meetings. But it does not in terms or by implication restrain the directors from calling them at other times without such application, whenever in their judgment it may be expedient or necessary so to do. Certainly any such restriction on the authority of the directors would be unreasonable, and could be created, if at all, only by the most clear and explicit language. By Rev. Sts. *c.* 37, § 25, directors of mutual insurance companies are expressly authorized " to manage and conduct all the business thereof." Under the authority thus granted, there can be no doubt that legal power was vested in the directors of the plaintiff corporation to call special meetings. It is equally clear that this power was neither abridged nor taken away by the operation of the by-law on which the defendants rely, and that it was well and legally exercised in calling the meeting at which the provisions of *St.* 1849, *c.* 104 were accepted by the plaintiffs.

An equally decisive answer to this ground of defence is, that the objection to the mode of calling the meeting in question, even if well founded, is not open to the defendants. The provision of the statute authorizing a division of risks was in fact

accepted by the corporation, and they had proceeded to act under it, and had carried on business in conformity to its enactment for ten years before the defendants became members of the corporation. By accepting a policy of insurance under these circumstances, they cannot now object to any informality in the previous proceedings. By coming in after a practical acceptance of the act for so long a period, they waived all technical defects and irregularities. They stand in no better position than a stockholder of a corporation, who is estopped from raising any objection to the legal organization of the company, after they have proceeded under an actual organization and transacted business for several years. *Chester Glass Co.* v. *Dewey*, 16 Mass. 94, 101.

The other objection to the legality of the meeting is, that a quorum of members of the company, according to the requisition of the 19th by-law, was not present at the time the act was accepted. It is true that the record does not show affirmatively that fifteen members of the company were present at the meeting. Nor is it necessary that it should. The contrary does not appear. It is sufficient that the record shows that the meeting was duly called, and proper notice of it seasonably given. The law will assume, in the absence of evidence, that a proper number were present to transact the business for which the meeting was called. Illegality will not be presumed, but the contrary. The maxim of law in such cases is, *omnia rite acta presumuntur Sargent* v. *Webster*, 13 Met. 504.

2. It is next objected that there was no actual division of the property insured into two distinct classes, as required by the statute, after its provision had been accepted by the plaintiffs. But we do not think this objection is supported by the facts which are disclosed in these exceptions. Without taking into account policies which were issued prior to August 2d 1849, purporting to be in the second class, it appears by the evidence of the secretary of the company that, between the last named date and the first day of October following, the sum of one hundred thousand dollars was subscribed to be insured in the second class, and policies duly issued therefor. This we think was

a practical division of the risks, in pursuance of the provisions of the statute. Nor do we see how any other division of risks could conveniently be made. After the act was accepted, the company had full power to divide the risks. How could that power be exercised? Certainly it was not necessary to wait until the requisite sum was subscribed before making a division of the risks. Such a mode of carrying into effect the provisions of the statute would be hardly practicable. The only reasonable mode of making the division would be by classifying each risk when it was offered and assumed by the company. That was the time when the nature and situation of the property would be examined and considered with a view to ascertain the expediency of taking the risk, and the premium at which it would be safe and proper to insure it, and, as necessarily incident to this, would be the determination of the question into which of the two classes or divisions the risk would fall. The division, therefore, would be appropriately and properly made day by day as each risk was approved. Such was the course adopted by the plaintiffs. A set of books was opened in which the second class of risks was entered, the accounts of the two classes were kept separate and distinct, and the business of the company conducted on the basis of a division of the risks according to the statute. Whenever, therefore, the requisite amount of one hundred thousand dollars of property to be insured in the second class was subscribed and assumed by the company, the division of risks became complete and the authority of the corporation to issue policies designated as belonging to the two classes was plenary. The only irregularity was in issuing policies thus designated before the full amount was subscribed in the second class, as required by statute. But this, we think, is quite immaterial. Inasmuch as the requisite amount was obtained within a brief period after the acceptance of the act, and as all the policies in the second class issued after the 2d day of August 1849 must have been granted by the company and received by the parties insured in contemplation of the contingency that the necessary amount would be subscribed in that class. and on the implied condition that the

statute in this particular would be complied with, we can see no good reason to doubt their legality, nor any sufficient ground for maintaining that the provision of the statute was not substan. tially fulfilled ; especially as it does not appear that the parties to the contracts of insurance, the plaintiffs on the one hand or the assured on the other, have ever called in question their validity. Nor is this all. It affirmatively appears that the corporation have recognized all the policies issued between August 2d 1849 and the 1st of October following as valid contracts in the second class, and have fully ratified and affirmed them by including them in their annual returns, and in the reports of their treasurer and auditing committee, as constituting risks of that description duly classified under the statute.

3. The same considerations are applicable to the further objection, that it does not appear that the sum of one hundred thousand dollars was subscribed to be insured in the second class after the acceptance of the act. If the fact be so, which does not distinctly appear by the exceptions, it is shown that this sum was subscribed between the 2d day of August, five days before the vote accepting the act was passed, and the 1st of October following. The subscriptions which preceded the vote may fairly be presumed to have been made in contemplation of the immediate acceptance of the act by the company, and they have since been fully ratified and confirmed by the acts of the plaintiffs, and are not shown to have been disapproved by the assured.

These are all the objections urged by the defendants, based on irregularities and informalities in the action of the corporation in accepting the statute authorizing a division of risks into classes, and in making such division in conformity to the requirements of law. The answers we have already given to them seem to us to be decisive, and to dispose of the grounds of defence on these points. We doubt very much, however, whether the defendants are in a position to be heard in alleging such defects as a ground of resisting the plaintiffs' claim on the note in suit. The defects and technical errors on which they rely, if originally well founded and not subsequently cured, occurred many years ago, before the

defendants became members of the corporation, and all the contracts of insurance which were made at that time, and which might have been injuriously affected by the irregular action of the corporation, have long since terminated. Nor is it shown that the rights of the defendants as members of the corporation and holders of a policy have been practically affected in an appreciable degree by these alleged errors and informalities. Under such circumstances, a party cannot be permitted to set aside his contract, unless he is able to show that its enforcement would clearly violate the settled rules of law. It is also open to question whether, under any circumstances, some of the objections relied on by the defendants would constitute any defence to this action. See *County Commissioners* v. *Aspinwall,* 21 How. (U. S.) 545. *Royal British Bank* v. *Turquand,* 6 El. & Bl. 327. The case, however, does not require us to express a definitive opinion on these points.

5. Another objection to the maintenance of this action, of a different character, is suggested by the defendants. It is, that the contract of insurance is invalid, because the risk assumed is of a class which the company had voted not to insure. There is no evidence which supports this objection. It only appears that the directors had instructed their agents not to take risks of the kind covered by the policy issued to the defendants. But it is not shown that the directors or other officers of the corporation were prohibited or restrained, either by a by-law or vote, from issuing policies on property of such description.

*Exceptions sustained.*